**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **WELLS FARGO INSURANCE** | ) | **CASE NO. 8:09CV50** |
| **SERVICES OF MINNESOTA, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM** |
| **vs.** | ) | **AND ORDER** |
| | ) | |
| **KATHY MOCK, COLLABORATIVE** | ) | |
| **INDUSTRIES, INC., AND  ORDER** | ) | |
| **QUALITY FIRST INSURANCE, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court on the Defendants' Motion in Limine (Filing No. 159). Defendants Kathy Mock ("Mock"), Collaborative Industries, Inc. ("Collaborative Industries"), and Quality First Insurance, LLC ("Quality First"), move the Court to prevent Plaintiff Wells Fargo Insurance Services of Minnesota, Inc. ("Wells Fargo"), from presenting certain evidence of damages.  Specifically, Defendants seek to prevent Wells Fargo from presenting evidence based on a "lost asset" theory of damages; or a theory that it may recoup compensation paid to Mock after her alleged breach of her duty of loyalty; or any evidence of damages based on its causes of action for unjust enrichment or defamation per se.

For the reasons discussed below, the motion will be denied, without prejudice to the Defendants raising their objections to Wells Fargo's evidence and proposed jury instructions at the time of trial, and without prejudice to Defendants requesting a hearing outside the presence of the jury to assess whether Wells Fargo's expert witnesses' reasoning or methodology properly can be applied to the facts at issue.

## DISCUSSION

### *Timeliness of Motion*

Wells Fargo argues that motions in limine that address the issue of the proper calculation of damages are in fact motions for partial summary judgment, and, as such, the Defendants' motion is untimely. (Plaintiff's Brief, Filing No. 170, pp. 10-12.) The U.S. Court of Appeals for the Eighth Circuit, however, has affirmed at least one district court's decision to limit evidence and argument on a plaintiff's theory of damages, pursuant to the granting of a motion in limine. *Dairy Farmers of America, Inc. v. Travelers Ins. Co.*, 391 F.3d 936, 941 (8th Cir. 2004). Accordingly, this Court will not deny the Defendants' Motion in Limine as untimely.

### *"Lost Asset" Theory of Damages*

The Defendants assert that Wells Fargo cannot claim damages based on a "lost asset" theory, *i.e.*, an estimate of the market value of the book of business it lost due to the Defendants' alleged wrongdoing, because that theory of damages is applied only in contract actions where such damages were in the contemplation of the parties at the time they entered into the contract. (Defendants' Brief, Filing No. 160, p.3, citing *Schonfeld v. Hilliard,* 218 F.3d 164, 176 (2nd Cir. 2000).) The Defendants ask that Wells Fargo be precluded, in limine, from offering evidence or argument pursuant to the "lost asset" theory in connection with its claims based on misappropriation of trade secrets in violation of Neb. Rev. Stat. § 87-501, *et seq.* (Amended Complaint, Filing No. 82, Count I)[1], tortious

---

[1]  Neb. Rev. Stat. § 87-504 (Reissue 2008) allows an injured party to recover damages including "both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by

2

Interference with business relationships (*id.*, Counts III and IV), Civil Conspiracy (*id.*, Count V), and unfair competition in violation of Neb. Rev. Stat. § 59-1601, *et seq.* (*id.*, Count VI)[2].

Wells Fargo notes that Nebraska law does not preclude it from proceeding on its "lost asset" theory of damages, and points to an unpublished Nebraska Court of Appeals decision[3], applying the "lost asset" measure of damages in a factually similar case.

There appears to be no Nebraska Supreme Court decision or model Nebraska Jury Instruction directly on point, but guidance is available from the Nebraska Supreme Court:

> We have often stated that a plaintiff's evidence of damages may not be speculative or conjectural and must provide a reasonably certain basis for calculating damages. The general rule is that uncertainty as to the fact of whether damages were sustained at all is fatal to recovery, but uncertainty as to the amount is not if the evidence furnishes a reasonably certain factual basis for computation of the probable loss. A plaintiff's burden of offering evidence sufficient to prove damages cannot be sustained by evidence which is speculative and conjectural, but proof of damages to a mathematical certainty is not required; the proof is sufficient if the evidence is such as to allow the trier of fact to estimate actual damages with a reasonable degree of certainty and exactness.
>
> We have consistently framed the question whether the evidence of damages is "reasonably certain" as a question of law, and not as a matter to be decided by the trier of fact.
>
> In other words, the initial question of law for the trial court is whether the evidence of damages provides a basis for determining damages with reasonable certainty, *i.e.*, the evidence of damages is not speculative or conjectural. If the evidence does provide such a basis, the issue of damages can be submitted to the jury. The jury, however, is not charged with the duty

---

misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret."

[2]Neb. Rev. Stat. § 59-1609 (Reissue 2004) provides for "actual damages" and injunctive relief for injured parties.

[3]*Insurance Consultants, Inc. v. Nyholm, No.* A-98-253, 1999 WL 571286, at *11 (Neb. Ct. App. July 20, 1999).

of determining whether the evidence of damages is reasonably certain; rather the jury is instructed that the plaintiff must prove the nature and extent of damages by the greater weight of the evidence.

The one context in which we have held that the jury is to be instructed that damages must be proved with "reasonable certainty" is when the plaintiff seeks prospective damages, such as recovery for . . . loss of earning capacity, and the evidence warrants such an instruction. In those cases, we have held that the jury is to award such damages only where the evidence shows that the future earnings . . . for which recovery is sought are "reasonably certain" to occur.

*Pribil v. Koinzan*, 665 N.W.2d 567, 572-73 (Neb. 2003) (internal citations omitted).

Applying these general principles to the case at hand, it is the responsibility of this Court to determine whether Wells Fargo's evidence of damages is speculative or conjectural, before the issue of damages may be presented to the jury. If Wells Fargo's evidence of damages is not speculative or conjectural, the jury may be instructed to determine the measure of damages, if any, by the greater weight of the evidence.

Whether Wells Fargo's expert witnesses' testimony on the "lost asset" theory of damages is speculative or conjectural is a matter for the Court to determine, and a hearing outside the presence of the jury pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), may be required to assess whether their "reasoning or methodology properly can be applied to the facts in issue." *Id.*, at 589 n.7, 592-93.

### ***Recoupment of Compensation Based on Alleged Breach of Duty of Loyalty***

Count II of Wells Fargo's Second Amended Complaint (Filing No. 82, p. 10) alleges that Mock breached her duty of loyalty. Wells Fargo has indicated that it will seek to recover $58,867.44 it paid to Mock from October 1, 2008, until her effective termination on February 1, 2009.

4

The Defendants ask the Court to preclude Wells Fargo from producing evidence or argument on its theory that it should be able to recoup compensation paid to Mock during the time she allegedly was in breach of her duty of loyalty, because there is no Nebraska court decision directly on point, and because Neb. Rev. Stat. § 48-1230(1) (Supp. 2007) prohibits employers from deducting, withholding, or diverting any portion of an employee's wages, except as authorized by state of federal law, court order, or written agreement. Wells Fargo asserts that agency principles in the Restatement (Second) of Agency, applied by Nebraska courts, support Wells Fargo's theory of damages, and that Neb. Rev. Stat. § 48-1230 is inapplicable to the case at hand.

While there appears to be no Nebraska Supreme Court decision specifically allowing an employer to recoup compensation already paid to a disloyal employee, that does not end this Court's inquiry. "If the path that a state court would follow when presented with a novel question is unclear, then [federal court] may decide the issue by predicting what the state court would do." *Grassmueck v. American Shorthorn Ass'n,* 402 F.3d 833, 839-40 (8th Cir. 2005). "In formulating [a] prediction, the approach taken by other jurisdictions is relevant." *Id.* at 840.

The Restatement (Second) of Agency § 469 provides: "An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned."

The Nebraska Supreme Court has applied the Restatement (Second) of Agency in finding that "[a] principal whose agent has violated her or his duties may properly refuse to

5

pay compensation." *Daubman v. CBS Real Estate Co.*, 580 N.W.2d 552, 561 (Neb. 1998), citing *Walker Land & Cattle Co. v. Daub,* 389 N.W.2d 560, 566 (Neb. 1986) (Agent was not entitled to management fee for period of time when agent was in willful and material breach of its duty); and *Allied Securities, Inc. v. Clocker*, 176 N.W.2d 914, 916 (1970) ("A principal whose agent has violated his duties may properly refuse to pay compensation.").  See also *Neece v. Severa*, 560 N.W.2d 868, 873 (Neb. App. 1997) (Applying § 469, and quoting comment (c), noting that an agent's misconduct will warrant a complete denial of unapportioned compensation "when the agent, in complete disregard of his contractual obligations, fails to perform or misperforms the promised services and has no substantial moral excuse for so doing, or is guilty of disloyal or grossly insubordinate conduct.")

Regardless, the Defendants assert that Nebraska case law does not suggest that an employer can "claw back" compensation already paid to an employee who breached a duty of loyalty.  (Defendants' Brief, Filing No. 160, p.5.)

Consulting the approach taken by other jurisdictions, in an effort to predict the path that the Nebraska Supreme Court would follow, it is apparent that other jurisdictions have allowed an employer to recoup payments made to an employee who breached a duty of loyalty, for the time during which the employee was in breach, if the breach was egregious. *Cameco Inc. v. Gedicke*, 724 A.2d 783, 790 (N.J. 1999) ("[T]he facts color an employer's right to recoup compensation."); *Chelsea Indus., Inc. v. Gaffney*, 449 N.E.2d 320, 327 (Mass. 1983) (Unless disloyal employees proved the value of their services, the employer was entitled to recover their entire compensation); *Am. Timber & Trading Co. v. Niedermeyer*, 558 P.2d 1211, 1223 (Or. 1976) ("The remedy of restoration of compensation

6

is an equitable principle and its applicability is dependent upon the individual facts of each case.").

Finally, Neb. Rev. Stat. § 48-1230 is not a bar to Wells Fargo's recoupment-of-compensation claim against Mock based on her alleged breach of duty of loyalty.  Wells Fargo did not deduct, withhold or divert any portion of Mock's wages.  If Wells Fargo is allowed to recoup payments made to Mock during her period of alleged disloyalty, any such recovery will be effected "by order of a court of competent jurisdiction."  *Id.*

This Court concludes that Wells Fargo should not be precluded, in limine, from presenting evidence and argument in support of its theory that it should recover the compensation it paid to Mock during the term of her alleged disloyalty.  The Court reserves judgment on the question of what issues will be for the finder-of-fact, and what matters may remain in the province of the Court, acting in equity.

### *Damages Based on Unjust Enrichment or Defamation Per Se*

Count VII of the Amended Complaint (Filing No. 82, p. 15) asserts a claim against all Defendants for unjust enrichment, based on their past and future receipt of commissions and other payments from clients that Wells Fargo alleges were solicited away from it unlawfully.  Count VIII of the Amended Complaint (*id.*, pp. 15-16) asserts a claim against Mock for defamation per se, based on her alleged misrepresentations to Wells Fargo's customers to the effect that Wells Fargo had closed its Omaha offices.

Defendants ask the Court to preclude Wells Fargo, in limine, from offering any evidence of damages under these theories of liability, because Wells Fargo failed to provide a computation of any such damages as required by Fed. R. Civ. P. 26(a)(1)(A)(ii), and because Wells Fargo's experts were not able to respond to questions about how the

7

calculation of damages under the "lost asset" theory corresponded to Wells Fargo's specific causes of action.  Defendants note that Fed. R. Civ. P. 37(c) precludes parties from using information at trial that was not properly disclosed as required by Rule 26.

Wells Fargo responds that its "lost asset" theory of damages is equally applicable to its claims based on unjust enrichment and defamation per se. Wells Fargo's First Amended Rule 26(1) Disclosures (Filing No. 161-4), submitted on November 2, 2009, included the statement: "In this litigation [Wells Fargo bases] its damages on a lost asset theory of damages, whereby [Wells Fargo] is entitled to the lost market value of its income producing asset." *Id.*, p.2.  Nothing in the disclosures appears to preclude the "lost asset" theory of damages from applying to Counts VII and VIII.  Neither does the fact that Wells Fargo's experts could not explain how their calculation of damages related to various theories of liability indicate that the "lost asset" theory cannot be applied to Wells Fargo's claims based on unjust enrichment and defamation per se.  The experts's testimony concerns the calculation of the market value of a book of business, and not the law.

Finally, the Defendants' assertion that Wells Fargo should not be able to proceed with its "lost asset" theory of damages and *also* seek damages based on Mock's post-termination compensation from Quality First Insurance, or Wells Fargo's lost profits, is well-taken.

IT IS ORDERED:

Defendants' Motion in Limine (Filing No. 159) is denied, without prejudice to Defendants raising their objections to Plaintiff's evidence and proposed jury instructions at the time of trial, and without prejudice to Defendants seeking a

8

hearing outside the presence of the jury to assess whether the Plaintiff's expert witnesses' reasoning or methodology properly can be applied to the facts at issue.


DATED this 21st day of May, 2010.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge